Thank you. The next and last case we'll call is Fugler v. Hahs. Counsel? Justice? Counsel? This is a case that came from Madison County, a criminal trial of Mr. Hahs. Mrs. Hahs is here in court today. The argument is that in order to show on counts 1 and 2, it has to show penetration. It can be ever slight. We agree with that. That's what the basis is. But when you look at the seven witnesses at this trial, Deborah Smith was a parental grandmother. She gave no testimony as to any penetration whatsoever. Hilary Smith, who is a mother, said that she asked her daughter, L.S. we refer to her as, one evening about her relationship with Mr. Hahs, and she backed away. The next morning she re-approached her daughter, and she asked, did Mr. Hahs ever go inside you? And the daughter said yes with a finger. And Ms. Smith said immediately, and that was her word immediately, her daughter said, no, no, I lied. I take it back. There was a physical exam that Ms. Hilary Smith, the mother, was at, and she said she was told the physical exam showed everything was okay. The third witness was Detective Hayes from the Detroit Police Department. He gave no testimony as to any penetration. The fourth witness was L.S. herself, and in part, Ms. Nolan, the prosecutor, asked, was there anything that happened with Uncle David that you didn't like? And L.S. responded, well, not really because I don't remember. There's no testimony in the courtroom whatsoever of any penetration whatsoever. The next witness was Child Advocacy, Senator of Illinois, and in part, what was asked there in the cross-examination for me was, did you ask her, being L.S., during the examination, did he touch you inside or outside? And the answer from the Child Advocacy, Senator of Illinois, said, eventually I did at the end. Then I asked her the question, and her, being L.S., when you inquired, did he touch you inside or outside, what was her comment to you? And the answer was, it seemed like she had difficulty answering the question, and that's when I was talking earlier that we tried to make the question as broad as possible. But sometimes you eventually come to a direct question, and to the direct question she said, only outside. And my question was, never indicate inside, is that correct? She didn't. The sixth witness, the last one the state called, was a certified pediatric nurse practitioner who actually did the exam of L.S. herself. And in part, under cross-examination, she was asked, and what is your finding, the L.S.'s medical exam? The answer was, L.S. had a normal examination, her hymen was naturally angular, with a smooth edge. There was no evidence of injury. Later on, I asked, ma'am, so I understand the physical exam was normal, is that correct, ma'am? The witness said, yes. I asked, and is that the exam you did yourself completely from beginning to end, the physical exam? And she responded, the physical exam, yes. I asked, and you found no evidence of trauma during the exam, is that correct? Permanent trauma, yes. Well, did you find any trauma at all? And the answer is, no, I did not. Then I asked, now based upon your education, experience, and training, did you find any evidence of sexual penetration during your physical exam? I did not. It was a normal exam, but that is to be, that is not, that is expected. Question, okay, but during your exam, you didn't find any evidence of sexual penetration, did you? No, there was no injury. In conclusion, I asked, now ma'am, during your exam, did you find any evidence that your patient had any trauma, any intrusion into the area you were examining? No, her exam was normal. Mr. Walker, what about your client's statement? What about the defendant's statement where he admitted his finger might have gone inside her butt? And he admitted to hurting her anus, and hurting her butt was one of the worst things he did. And tickling her vagina 20 to 30 times. Yeah, what about all of that? Well, he asserted how Menard recounts to a three and four, which addresses that. But let me be exact. If you look at his tape, the statement he made to the police in Troy, he always left out on this part. He says that he was wiping her butt, and his fingernail may have cut her or hurt her when she sat out. That's very clear what he said. He gave an explanation. It says he admitted his finger might have gone inside her butt. Correct. And there's case law that says, I think People v. Batons Lopez, talks about when a defendant's penis came in contact with the back of her private parts, and the jury was allowed to conclude that there had been penetration. I'm familiar with that case, Justice. But in this case, you have to read his whole statement, look at his whole interview, and the only time he admits any time of possibly entering her buttocks with his finger is when he's wiping her and he thinks his fingernail may have got her. How about tickling the vagina all the time? I mean, are you saying that how do you tickle a vagina without possibly entering the outer rim? Isn't a jury allowed to conclude that when you tickle a vagina 20 or 30 times? And she says, ow? Your Honor, being in practice of law for more than 40 years and being 70 years old, I would hope the system is still you've got to prove it. It's not inferred or assumed from something like that. There's got to be proof of it. Well, that's what this instruction on circumstantial evidence is about, isn't it? I understand that, Your Honor. I mean, you and I are getting close in age, so I'm with you there. I understand, Your Honor. The circumstantial evidence allows you to draw reasonable conclusions. And it's reasonable conclusions on this, and I feel it's unreasonable when you base it. When you look at the interview by the Detroit Police Department to Mr. Hawes, he starts off typically not answering anything or saying anything. By the end, the police have done a good job, and he admits what he did. He's, like I say, a certain time in order for what he did, but he was sent away for things he didn't do, and the state never proved that there was any penetration, and we agree even slight penetration. There was no proof of that. Do you agree? I missed that last. You're saying that you showed or you agreed there wasn't even slight penetration? Correct, Your Honor. Because why do you think that? You're arguing the vagina is not slight penetration? Your Honor, the state has to prove our position is. The state has to prove that he penetrated her. I don't care how slight it is. We lose if it's even just a little bit, but there's no proof from any witness, anybody. Himself. He didn't say he penetrated her vagina, Your Honor. Well, you don't have to use the words penetrate. It has to be shown that the action could be construed reasonably to be even the slightest penetration. I agree with that, but there's no testimony from him whatsoever. He testified in this case. He's the seventh witness from the statement he made to the Detroit police that was videoed. He never said that he penetrated or went inside of her, and they bring all the experts out. They have her examined, the whole works, and it comes down that the mother says the daughter said he went inside of her, and immediately the mother says she went through that. Now, the state, won't you believe that, well, the daughter is 5 years old, which I believe she was very articulate, but I don't know what her mindset is, that she can think quickly and see her mother's reaction and change her story 100%. That's more of an articulate person. That's a genius to me. So the interview is a video? Yes, ma'am. Okay. Yes, ma'am. And I have not seen it. It's part of the evidence, and I think it's really, really important to watch what is really said versus what people put in print that's said. And the jury saw the video. I admit that. But sometimes these are, well, no, it's a different case. You get cases mixed up at 70 years old. I had one not too long ago that we had to have three starts of the video, you know, five minutes and start over, two, another five minutes, and then 10 minutes, another 10 minutes. They saw the thing three times. But this was a video. It's an evidence, and I think if a reasonable person looks at that, there is no admission whatsoever by my client of any penetration, harvest, or anything to any such organ of the individual L.S. And then it brings up to another issue here. Even if you believe that when he says on the video that he was wiping her and he had a fingernail, handrail, or something that may have cut her, I've wiped the back end of children before and never been brought into court for sexual penetration. But even if you believe that was sexual penetration. Don't tell me you've tickled someone's vagina 20 to 30 times or you might be brought into court. I always say I might be, Your Honor. There you go. Good point. Can I make this one quick statement here, Your Honor? Sure. The thing is he's charged with two counts, one and two. And I think there has been showing of two different occasions or two different events to be charged with two accounts and found guilty of both accounts. Thank you. Thank you, Counsel. Counsel? Your Honor, can I step back just a second? If you don't mind, just a second. I'm going to pause. Sure. We'll pause. No problem. Sure. May I please court? Counsel? Yes, ma'am. My name is Sharon Shanahan, and I represent the people of the state of Illinois. As counsel for the defendant has conceded, this case does not deal with whether a little girl's, a 5-year-old girl's 55-year-old uncle touched her vagina and her anus innumerable times. His only issue on appeal is whether there was penetration. And as the bench has noted, that means any intrusion, however slight. In the testimony at the court, the mother testified that her daughter told her that the defendant tickles me down here. The little girl was embarrassed and quiet and shy and quite unlike herself. The mother said, asked her daughter if the defendant had ever put anything inside her. And L.S. replied, yes, his finger. The record shows that Hillary was aghast and sort of jerked back. And little kids are little kids. When they think they've done something wrong, they say, I didn't mean it. So that, I believe, doesn't, the fact that she said, no, I lied, does not mean that her, there is case law that says a child's initial outcry of sexual abuse is especially relevant. And I believe L.S.'s initial outcry that he put his finger in me is far more relevant. Second of all, when the child advocacy interviewer talked to the little girl, she said, L.S. said that he played with her tushy. And there is evidence that indicates that's her bottom. And he, it hurt her tushy in there. So if we go no farther than that, we've proved anal penetration. Then we get to the defendant. And I strongly encourage this court to, I know you will, look at this interview that the defendant made to the police. First of all, he admitted touching her butt, touching her vagina, and making her touch and stroke his penis. He admitted that he hurt her anus. And he admitted that his finger might have gone inside her butt. This is what I want you to watch really carefully, and I don't mean to be vulgar when I show you this, but during this interview, when he's talking, when the defendant is talking about what he did to this little girl's vagina, his hands going like this the whole time, I don't know how you do that to a little girl's vagina and not penetrate. The pediatric nurse gave some testimony about the large lips of the labia on the vagina, and that to even look at a vagina, you have to move the lips of the labia. State posits that it is reasonable for any jury to infer that anyone tickling L.S.'s vagina would have to make slight contact with, at minimum, the labia of her sexual organ. And, especially when the defendant admitted that L.S. said, Ow! She said it hurt her tushy. And if you don't penetrate, you don't hurt. If you're stroking, it's not going to hurt. And mere touching does not hurt. Penetration hurts. There was a great deal of discussion by counsel for the defendant that of the physical exams of this little girl were normal. And I know how many cases all of us have seen in which a physical exam of a little girl is normal. I mean, even with rape, that area heals so quickly. But in any case, again, going back to this hand gesture, if this is what he's doing, it's not surprising that there's no evidence of damage. But correct me if I'm wrong. Injury is not an element of this offense. No, but penetration is. No, but, I mean, even a showing of harm is not. Correct. I'm sorry, I misunderstood your question. No. No. That's my point. It doesn't matter whether she hurt with her. It doesn't matter whether anything is hurt inside of her. It matters, again, slightest penetration. You don't have to go into the vagina. I'm not going to use hand gestures anymore. I think we did that. Well, I said I was going to do it once, and I think I did it twice. I found that on his, you will see it in the video, that most of the time he's talking about that, that's what he's doing. I want to address the fact that L.S. said that he didn't put, the question was, did he go on the inside or the outside? Children, five-year-old children are the most literal creatures in the world. My ex-husband's a horseshoer, and one day he was working on a very fractious horse, and there was a little boy running all over the place while he's trying to deal with this horse. And finally John stopped and said, don't run around the horse. And the little boy said, okay. And then he went back to work, and the next thing he knew, here went the little kid running past. And John said, I thought I told you not to run around the horse. And he said, I didn't run around the horse. I ran in front of the horse. That's how literal children are. I mean, when she's asked, do you know the name of your grandma or grandpa or uncle, she doesn't say yes, John, Mary, and Susie. She says, yes. When she's asked what it felt like when the defendant played with her tushy, she said it felt like skinning. When she was asked where the defendant kissed her, she said in the living room. Only when she was asked, where on your body did the defendant kiss you, did she say on the cheek and the lips. She's asked in this interview, when the defendant's hand touched you where you go potty, did it go on the inside or the outside? Well, his hand didn't go on the inside. And I think given the literalness of children this age, for her to even think that the tickling was, I mean, that's just fingers. But I think even that could be excused by the literalness of a child that age. Nonetheless, Justice Cates, you brought up the case of Batanz Lopez, and that was where the defendant's penis came in contact around the rim of the victim's anus, and the defendant contended that it could have been the rim of the buttocks. I don't usually get into talking about standard of review, but in this case we have to look at this jury's verdict and look at in the light of the state and in Batanz Lopez, the court ruled that in the light most favorable to the prosecution, any rational prior fact could have found beyond a reasonable doubt that the defendant's penis made contact, however slight. And in Peoples-Johnson, I think it's even more relevant because it said that we have the in-court testimony of the child that the defendant did not touch his penis, and that was compared against her mother's testimony and the victim's recorded testimony that he had. So again, conflicting testimony. Johnson noted that the jury determined the out-of-court statements were more credible and that conclusion was not so unreasonable, improbable, or unsatisfactory as to justify overturning the defendant's conviction. This little girl, by her words, by the defendant's words, by the words of her mother, it's clear that he penetrated her passionately. And it is even more clear that he penetrated her anally, and I would ask the court to affirm. Are there any questions? I don't believe so. Thank you, counsel. Thank you, Your Honor. Counsel? A case like this with a five-year-old is very difficult for me, much less the three of you probably, and setting aside our biases of somebody doing things that he's serving a minority for. But I would hope, again, two things. One thing I learned in 40 years, you don't tell judges what to do. But I would hope that you would look at the video, because I think the stakes agree with me, the video is very important in this case of my client at the Detroit Police Department, and see what is really said and in the context of false statements said, not something pulled out and said this, that, and the other, and what his explanations are. I argue that there's no anal penetration, wiping somebody's rear end and having a hangnail that scratches it, that's not sexual penetration. I was in Norfolk, Virginia yesterday in a deposition, buttoning the top of my shirt, and my fingernail on the left hand cut the middle finger on the right hand, just buttoning the shirt. I didn't expect it to cut me or anything, but it did from my fingernails being too long. I don't think people should jump to conclusions. I think they should look at what's there, and I feel here there's no showing of sexual penetration in either count. And the next thing is if the court finds that one of them occurred, then where's the second one here in this whole situation? Because he's serving time in Menard now for two, counts one and two, which is two separate instances of the Class X. Thank you very much, Justice. Thank you, counsel. We appreciate the briefs and arguments of both counsel. We'll take the case under advisement, issue a ruling in due course.